STATE of Missouri ex rel. Richard F. LEE, et al., Appellants,

v.

CITY OF GRAIN VALLEY, Missouri, et al., Respondent.

No. WD 70059.

Missouri Court of Appeals, Western District.

Sept. 15, 2009.

James M. Roberst, Esq., Blue Springs, MO, for appellant.

James T. Cook, Esq., and Matthew W. Geary, Esq., Kansas City, MO, for respondent.

Before JAMES E. WELSH, P.J., and VICTOR C. HOWARD and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

Richard and Kendra Lee appeal the circuit court's judgment denying their Petition for Writ of Mandamus, which sought to compel the City of Grain Valley to issue them a building permit for construction on their property. We affirm.

## Factual Background

The Lees live in an 800 square foot home in Grain Valley, Missouri. Sometime in 2007, they began to explore building a new residence on their property with officials of the City of Grain Valley. Specifically, the Lees desired to build a "modular home" of "15– or 1600 square feet," to replace their existing home. The Lees were informed by the City that their property was zoned commercial, and that building such a residence would therefore not be allowed. The Lees contend that they submitted "building permit papers" for their contemplated new home construction with the City on May 24, 2007, but that the City would not accept the application. The City disputes that this ever occurred.

The Lees then requested a zoning variance from the Grain Valley Board of Zoning Adjustment. After a hearing, the Board denied their request on June 13, 2007.

Grain Valley Ordinance Number 1906 took effect on June 25, 2007. Among other things, this ordinance zoned a swath of property, including the Lees', as "transitional."

On August 9, 2007, the Lees filed this lawsuit in the Jackson County Circuit Court, seeking, inter alia, a writ of mandamus against the City[1] "requiring [the City] to issue a Building Permit of the City of Grain Valley allowing [the Lees] to build a new home on their land replacing the current dwellings."

The case was tried to the court. The Lees called only one witness, Richard Lee, who testified that he no longer desired to build a new residence on the property, but instead wished to add on to the pre-existing structure, with the intention of more than doubling the current square footage.

On July 29, 2008, the court issued its judgment denying the Lees' Petition for Writ of Mandamus, based on its conclusion that the Lees' property "was zoned commercial by Grain Valley in the early 1980s." The Lees now appeal.

## Analysis

On appeal, the Lees assert two Points Relied On. In Point I, they argue that the circuit court erred in finding that their property was zoned commercial, thus precluding the City from granting the requested residential construction permit, because the court relied upon inadmissible parole evidence to establish the content of the relevant zoning ordinance. (Evidence at trial indicated that neither the City nor the Lees could locate the ordinance purportedly zoning the Lees' property as commercial.) In Point II, the Lees contend that the circuit court erred in denying mandamus relief because the City "admitted that [the Lees'] property was zoned residential due to [the City's] failure to answer the first and second amended requests for admissions ... and therefore [these requests] should have been deemed admitted per Supreme Court rule."

### I.

▆▆▆ "The remedy of a writ of mandamus is only appropriate where a party has a 'clear duty to perform a certain act.' " *Maxwell v. Daviess County,* 190 S.W.3d 606, 610 (Mo.App. W.D.2006) (citation omitted). "[M]andamus only lies when there is an unequivocal showing that a public official failed to perform a ministerial duty imposed by law." *Modern Day Veterans Chapter No. 251 v. City of Miller,* 128 S.W.3d 176, 178 (Mo.App. S.D. 2004). "The purpose of mandamus is to

1. The Lees also sued nine individuals who allegedly represented the City. The identity and roles of these individuals is not relevant to our disposition of this appeal.

require the performance of a duty already defined by the law." *Maxwell,* 190 S.W.3d at 610. "Thus, mandamus enforces existing rights, but may not be used to establish new rights." *Id.* "Whether a petitioner's right to mandamus is clearly established and presently existing is determined by examining the statute or ordinance under which petitioner claims the right." *State ex inf. Riederer ex rel. Pershing Square Redevelopment Corp. v. Collins,* 799 S.W.2d 644, 649 (Mo. App. W.D.1990). "Therefore, in order to prevail, [the Lees] must demonstrate that the [City] had a clear duty existing under the current law to" issue the permit in question. *Maxwell,* 190 S.W.3d at 610.

The judgment in a mandamus action "will be affirmed unless the trial court commits an abuse of discretion so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Modern Day Veterans,* 128 S.W.3d at 177–78. "We will affirm if the trial court reached the right result in the case, even though the court might have ruled on a basis different from the basis we apply in affirming." *Gregg v. City of Kansas City,* 272 S.W.3d 353, 362 (Mo.App. W.D.2008) (citing *Kehrs Mill Trails Assocs. v. Kingspointe Homeowner's Ass'n,* 251 S.W.3d 391, 396 (Mo. App. E.D.2008)); *see also Kubley v. Brooks,* 141 S.W.3d 21, 27 n. 5 (Mo. banc 2004).

## II.

Both of the Lees' Points Relied On ignore a central, undisputed fact: that their land was zoned transitional by the time the Lees filed their Petition for Writ of Mandamus. It is not clear what rights the Lees had to construct and/or add on to a residential building under this transitional zoning classification, because the issue was not litigated below, nor on appeal; instead, the Lees expressly based their petition, and their arguments here, on the assumption that the property was zoned "R–1," or residential.

Although the Lees do not argue their right to a building permit under the transitional zoning to which their property was subject at the time of suit, it is *that* zoning classification which controls here. The fact that the Lees may have filed a building permit application under a prior zoning ordinance does not give them vested rights under that prior regulatory regime. Missouri law recognizes that "[a] new or modified ordinance may not be applied as to require the cessation of an established prior nonconforming use" of property. *Storage Masters—Chesterfield, L.L.C. v. City of Chesterfield,* 27 S.W.3d 862, 865 (Mo.App. E.D.2000). The Lees do not allege that the City's enactment of its transitional zoning ordinance interfered with their *current* non-conforming use of their property, however. "A non-conforming use is a use of land which lawfully existed prior to the enactment of a zoning ordinance. . . ." *In re Coleman Highlands,* 777 S.W.2d 621, 624 (Mo.App. W.D.1989); *see also Odegard Outdoor Adver., LLC v. Bd. of Zoning Adj.,* 6 S.W.3d 148, 150 & n. 1 (Mo. banc 1999). "The use is maintained after the effective date of the ordinance, even though it is not compliant with the new restrictions." *St. Charles County v. St. Charles Sign & Elec., Inc.,* 237 S.W.3d 272, 277 (Mo.App. E.D.2007). "The prior use of the property establishes a vested property right, and the new ordinance may not be applied to require the owner to cease that use." *Id.* "To establish a nonconforming use, one must have at least made a substantial step, and a 'mere preliminary work which is not of a substantial nature does not constitute a nonconforming use.' " *Storage Masters,* 27 S.W.3d at 866 (citation omitted).

"The theory behind the nonconforming use doctrine is that applying new zoning restrictions to established uses of land would constitute a taking of private property without just compensation or due process." *Id.*; *see also State ex rel. Drury Displays, Inc. v. City of Shrewsbury*, 985 S.W.2d 797, 799 (Mo.App. E.D.1998). "The test for establishing a prior nonconforming use is strict," with the burden of proof on the landowner. *Storage Masters*, 27 S.W.3d at 865–66.

Even if the trial court had found that the Lees made an effective permit application before Grain Valley's new ordinance was enacted (which is itself far from clear), the filing of that application alone would not establish that the Lees had a vested right to the continued application of the prior zoning ordinance to their property. In *Outcom, Inc. v. City of Lake St. Louis*, 996 S.W.2d 571 (Mo.App. E.D.1999), the Eastern District addressed "how far must landowners go towards establishing a[new] use of land before they acquire a vested right in the continued use of the land which is protected from a zoning ordinance prohibiting such a use." *Id.* at 575. After reviewing relevant case law, the court concluded:

> Whether the use is considered to "exist" depends on how far work on the conversion has progressed. *A landowner's mere intention or plan to use land for a particular purpose, receipt of a permit, or purchase or lease of land in reliance on existing zoning laws does not give rise to a vested right.* If the work completed towards converting the land is substantial in nature as opposed to merely preliminary, the landowner has a

nonconforming use and has a vested right to continue in the nonconforming use.

*Id.* (citation omitted; emphasis added); *see also Storage Masters*, 27 S.W.3d at 866; *Drury Displays*, 985 S.W.2d at 800; *McDowell v. Lafayette County Comm'n*, 802 S.W.2d 162, 164 (Mo.App. W.D.1990) ("It has been held that purchase, planning and even securing a permit do not establish a lawful nonconforming use.").

In this case, the only showing the Lees can even plausibly make is that they submitted an application to the City for a residential building permit, and then sought a variance. But as outlined above, submission of a permit application under a prior zoning ordinance is insufficient to establish a vested right to the continued application of the prior ordinance—indeed, even the City's *issuance* of a permit under the prior law would apparently not be enough.

Because the Lees did not plead in their petition, or argue here, that they are entitled to a building permit under their property's current zoning classification, we cannot find that the circuit court abused its discretion in denying them mandamus relief.[2]

### III.

Quite apart from the Lees' failure to argue for relief under the relevant, currently applicable zoning scheme, we note an additional ground which mandates affirmance. As discussed above, "mandamus only lies when there is an unequivocal showing that a public official failed to per-

---

**2.** Because the Lees do not claim that the City's conduct equitably estops it from enforcing its new ordinance, we do not address the possible application of that theory. *See Outcom*, 996 S.W.2d at 576 (discussing *State ex rel. Casey's Gen. Stores, Inc. v. City of Louisi-* *ana*, 734 S.W.2d 890 (Mo.App. E.D.1987)). We also note that, in light of our disposition, we have no occasion to decide what rights the Lees may have under the *current* zoning of their property.

form a ministerial duty imposed by law." *Modern Day Veterans,* 128 S.W.3d at 178. Yet despite this demanding standard, the Lees did not introduce any evidence at trial, beyond Mr. Lee's self-interested testimony, that proved that they even submitted an application to the City for a building permit. While Mr. Lee claimed on cross-examination that his application for a permit was "in my paperwork," he acknowledged that it was not introduced as evidence. Besides the omission of their permit application, the Lees failed to submit any type of plan that outlined even the most general information as to the type of construction they intended. Indeed, Mr. Lee testified that their construction plans had evolved over time, changing from the construction of a brand-new residence that would replace the existing structure, to merely adding on to their current home to increase its size to "something like" 1,700 to 1,800 square feet. We also note that the Lees failed to introduce into evidence any ordinance detailing the R–1 zoning classification to which they claim their property is subject.

■ The Lees' failure to submit their permit application to the trial court, or provide specific details as to their planned construction, separately mandates affirmance, because there was no basis on the present record for the trial court to find that the City had a clear duty to perform a ministerial act in the Lees' favor. The Eastern District affirmed the denial of mandamus relief in similar circumstances in *State ex rel. McDonald's Corp. v. Daly,* 748 S.W.2d 51, 54 (Mo.App. E.D.1988). The court explained:

> [T]he issuance of a building permit is a ministerial act which the building commissioner may not refuse to perform *if the requirements of the applicable ordinance have been met.* ... [However,] *[t]he record clearly establishes other valid prerequisites for the issuance of the permit that were not met.* The building commissioner testified unequivocally that the application was defective because it failed to identify the contractor; further, the plans for the truss diagrams and for the minimum required fire protection for a commercial structure were not sufficiently detailed. While [plaintiff] characterizes these problems as "minor", and capable of being worked out in the normal course of events, these problems undercut [plaintiff's] right to the relief sought by mandamus. *To be entitled to mandamus, one must show a clear, unequivocal, specific right to have the act performed as well as a corresponding present, imperative, and unconditional duty on the part of respondent to perform the action sought.* [Plaintiff] did not show a clear, unequivocal right to have the building commissioner issue it the building permit.

*Id.* at 54 (emphasis added; citation omitted).

Here, the circuit court would have been entitled to find that the Lees had not submitted any application to the City at all; but even accepting that an application was filed, the Lees failed to prove that their building plans satisfied the various requirements for a residential construction permit pursuant to the City's applicable ordinances, because they provided the trial court with only vague information as to what their building plans, or the City's legal requirements, actually were. Nothing brings this into sharper focus than the relief the Lees requested below: "a permanent writ of mandamus ordering the City of Grain Valley to issue a building permit allowing [the Lees] to add onto [their] house *or* build new." Adding on to a preexisting structure is plainly different from building an entirely new one. The Lees' failure to specify in detail the precise

type of residential construction they desired to build, and the compliance of their planned construction with applicable ordinances, precluded the circuit court from granting a writ of mandamus finding "a clear, unequivocal, specific right to have the act performed as well as a corresponding present, imperative, and unconditional duty on the part of respondent to perform the action sought." *Id.*

The Lees argue on appeal that "[t]here is no evidence that their proposal violated any zoning ordinance and, accordingly, issuance of a permit was a ministerial act which should have been compelled by the Trial Court." But this argument fails to acknowledge that it was *their* burden to clearly establish an entitlement to a building permit from the City, and that this showing could not be made without demonstrating a plan that was compliant with the City's ordinances. On this record the Lees cannot demonstrate that the circuit court abused its discretion in denying their request for mandamus relief, because they failed to make an unequivocal showing that they were, in fact, entitled to a building permit from the City.

### Conclusion

Because the Lees failed to clearly show their right to a building permit under the zoning ordinance in place at the time they filed this lawsuit, we affirm the circuit court's judgment without addressing the merits of their Points Relied On.

All concur.